**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

———————————————————
                                                    :
CHRIS PERNA,                                        :
                                                    :
                          Plaintiff,                :
              v.                                    :      CIVIL ACTION NO. 05-4464 (JLL)
                                                    :
TOWNSHIP OF MONTCLAIR, ET AL.,                      :      **OPINION**
                                                    :
                          Defendants.               :
———————————————————:

APPEARANCES:

Nancy S. Martin, Esq.
Martin Melody, LLC
Revmont Park
3 Revmont Drive, Suite 316
Shrewsbury, New Jersey 07702
          Attorneys for Plaintiff

Frederick D. Polak, Esq.
Post, Polak, Goodsell, MacNeill & Strauchler, P.A.
425 Eagle Rock Avenue, Suite 200
Roseland, New Jersey 07068-1705
          Attorneys for Defendants the Township of Montclair
          Council, Ed Remsen, Ted Mattox, Joyce R. Michaelson,
          Gerald C. Tobin, Robin Schlager, Jerold Freier, and
          Sandra Long

Joseph M. Hannon, Esq.
Genova, Burns & sVernoia
Eisenhower Plaza II
354 Eisenhower Parkway
Livingston, New Jersey 07039-1023
          Attorneys for Defendants the Township of Montclair
          and Joseph M. Hartnett

LINARES, District Judge.

Plaintiff, Chris Perna, filed the instant lawsuit on September 12, 2005 against Defendants the Township of Montclair (the "Township"); the Township of Montclair Council (the "Township Council"); the Township of Montclair Mayor and former council member Ed Remsen; council members Ted Mattox, Joyce R. Michaelson, Gerald C. Tobin, Robin Schlager, Jerold Freier, Sandra Lang (collectively, the "council members"); and the Township of Montclair Manager Joseph M. Hartnett.  In her complaint, Plaintiff asserts that Defendants violated her rights pursuant to 42 U.S.C. § 1983 and the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. § 10:5-1 et seq.[1]  Currently before the Court are Defendants' respective motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the following reasons, the Court grants the motion to dismiss filed by the Township Council, Mayor Remsen, and the Township council members and grants in part and denies in part the motion to dismiss filed by the Township and Township Manager Hartnett.[2]

I.   **Factual History**

Plaintiff was an employee of the Township of Montclair since approximately 1984 and an employee of the Township's Law Department since 1987.  She worked as a legal secretary for the Township Attorney and Assistant Township Attorney.  Plaintiff alleges that beginning in January 1993, she was asked to take on duties in the Law Department that went beyond

---

[1]  The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because Plaintiff has asserted a violation of 42 U.S.C. § 1983.  The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

[2]  The Court decides the instant motions without oral argument as permitted by Federal Rule of Civil Procedure 78.

traditional legal secretary duties.  She claims that she assisted the Assistant Township Attorney, Richard Seltzer, with various litigation matters by, among other things, handling complaints, preparing motions, and conducting legal research.

In approximately June 2002, Mr. Seltzer became the Acting Township Attorney. Subsequently, Mr. Seltzer proposed to the Township and its council members, who purportedly adopt nonunion salary ordinances each year, that Plaintiff be granted a small raise and that given her increased job responsibilities, her title be changed from "legal secretary" to "legal administrator."[3]  According to Plaintiff, Mr. Seltzer also proposed that given Plaintiff's skill level, the position of Assistant Township Attorney should be left unfulfilled.  The Township took no immediate action with regard to Mr. Seltzer's request.

In the spring of 2003, the Township took the position that any non-union management employees making over $60,000 per year would not get a raise for the 2003 year.[4]  Plaintiff alleges that soon thereafter, all non-union management employees, including Plaintiff, began organizing with the CWA union.[5]  Plaintiff also became a union representative.  She claims that Mayor Remsen, then a council member, was not happy that management employees were

---

[3]  Plaintiff alleges that Mr. Seltzer first recommended that Plaintiff receive a raise and title change in November 2003, when he presented the Township with a proposed 2004 Law Department budget. Compl. at ¶ 23. Plaintiff further alleges that Mr. Seltzer "again proposed" a change in title and salary for Plaintiff in January 2003. Compl. at ¶ 24.  These dates are conflicting.  Mr. Seltzer would have had to first recommend that Plaintiff receive a raise and change in title in November 2002, and then ask again in January 2003.

[4]  Although her title was "legal secretary," Plaintiff presumably fell into this category of "non-union management employees making over $60,000."

[5]  Neither party further defines or provides any background information about the CWA union.

3

unionizing.

Plaintiff ultimately ceased her participation with the CWA union after learning through CWA union representative, Tom Bruno, that Township Manager Joseph Hartnett wanted Plaintiff removed from the union because her job in the Law Department made her a "confidential employee" and that Township Manager Hartnett was looking favorably on Plaintiff's repeated requests for a reclassification of her job title.

Plaintiff did not receive a raise in 2003.  Although all non-union management employees received a salary increase in November 2003, Plaintiff was still officially affiliated with the CWA union at that time, and thus, was ineligible for the salary increase.  Subsequently, in the spring of 2004, the Township granted Plaintiff a small raise, which was not as much as the amount Mr. Seltzer initially requested on Plaintiff's behalf.  The Township did not change Plaintiff's job title from "legal secretary" to "legal administrator" nor did it provide Plaintiff any other merit-based compensation for her assumption of additional duties.

In May 2004, Ed Remsen, who was previously a council member, was elected as the Township's mayor.  Plaintiff alleges that Mayor Remsen subsequently replaced Mr. Seltzer, the Acting Township Attorney, with his campaign manager, Alan Trembulak.  Plaintiff claims that she began to suspect that she would be terminated from her job because Mr. Trembulak was purportedly planning to use his own law firm to do the Township's legal work.  Plaintiff also alleges that at this time, her employment was being discussed at executive council sessions. Plaintiff believed that Mayor Remsen wanted to "clean out the Law Department" and "make a fresh start."   Compl. at ¶ 35.  In response to her concerns, Plaintiff retained counsel who wrote a letter to Township Manager Hartnett and the council members outlining Plaintiff's potential

claims against the Township should she be terminated.  Plaintiff was not terminated at that time.

In February 2005, Township Manager Hartnett told Plaintiff that she had to work in the Township's Clerk's Office, and thus, not in the Law Department, because the office was short-staffed due to an employee's medical leave.  Plaintiff complied with this transfer.  In April 2005, Plaintiff claims that Township Manager Hartnett informed her that "he promised the Council he would not increase the budget and her position of legal secretary was being eliminated as of the end of June 2005."  Compl. at ¶ 42.  Township Manager Hartnett purportedly informed Plaintiff that he planned to hire a more traditional secretary at half of Plaintiff's salary.  Plaintiff claims she was not offered this new position or any other position with the Township.  As of June 30, 2005, Plaintiff's employment was terminated.

Plaintiff disputes Township Manager Hartnett's purported need to terminate her position based on budgetary concerns.  Plaintiff alleges that Township Manager Hartnett, Mayor Remsen, and the other named Township officials eliminated positions purportedly for "budgetary reasons" but then hired their friends and campaign supporters at substantial salaries.  Plaintiff claims that Defendants violated her rights pursuant to 42 U.S.C. § 1983 by terminating her position in retaliation for her assertion of her constitutional rights to petition the Township for a redress of grievances and to associate with the CWA union.[6]  Plaintiff also claims that the Township is

---

[6]  The Court does not construe Plaintiff's complaint as alleging that any of the Defendants retaliated against Plaintiff by denying requests for a salary increase and change in job title submitted on Plaintiff's behalf by Mr. Seltzer.  Instead, it appears from reading Plaintiff's complaint and her opposition brief to the instant motion that Plaintiff is only claiming retaliation based on the termination of her position.

In any event, such allegations do not state a claim for relief.  Mr. Seltzer asked for a salary increase and change in job title for Plaintiff in approximately November 2002, and again in January 2003.  The Township Council did not adopt the request.  Plaintiff began organizing

liable under section 1983 for the acts of its policymaker in terminating her position and for

failing to train its employees.[7] Further, Plaintiff claims that Defendants violated the NJLAD,

N.J.S.A. § 10:5-1 et seq., by discriminating against Plaintiff based on her gender.  Plaintiff seeks

relief in the form of monetary damages, including compensatory, liquidated, and punitive

damages.

## II.    Standard of Review

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint that fails

"to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  In deciding a Rule

12(b)(6) motion to dismiss, the court must reasonably read the complaint and decide whether the

plaintiff has pled a cognizable cause of action entitling her to relief.  Nami v. Fauver, 82 F.3d 63,

65 (3d Cir. 1996).  In making this determination, a court accepts as true all of the well-pleaded

factual allegations within the complaint and any reasonable inferences drawn therefrom.  Nami,

82 F.3d at 65; Hayes v. Gross, 982 F.2d 104, 105-06 (3d Cir. 1992).  The court may also consider

exhibits attached to the complaint, matters of public record, and documents that form a basis of

plaintiff's claim.  Lum v. Bank of Am., 361 F.3d 217, 222 n.3 (3d Cir. 2004).  However, the

court need not consider plaintiff's bald assertions or legal conclusions.  Morse v. Lower Merion

with the CWA union in the late spring or early summer of 2003.  Thus, there is no temporal
relationship between Plaintiff's purportedly protected activities and her failure to receive a raise
and title change.  Further, the Township Council actually granted Plaintiff a raise, although a
small one, in the spring of 2004.  Thus, these allegations do not support a retaliation claim based
on Plaintiff's failure to receive a raise and change in her job title.

[7] The Court construes Count II of Plaintiff's complaint as asserting a claim for failure to
train against the Township, as a predicate for establishing municipal liability pursuant to section
1983.  Although Plaintiff's complaint is ambiguous, it is illogical to read this count as to apply to
any of the individual defendants.  Plaintiff does not allege that any of the remaining defendants
have the requisite training responsibility or supervisory control to be subject to such liability.

School Dist., 132 F.3d 902, 906 (3d Cir. 1997).

## III.    **Legal Discussion**

The Court will discuss the viability of Plaintiff's section 1983 and NJLAD claims against each defendant, grouping some of the defendants together for ease and efficiency.

## A.    **Liability of Township Council Members**

Plaintiff makes no allegations of retaliatory conduct on the part of council members Ted Mattox, Joyce R. Michaelson, Gerald C. Tobin, Robin Schlager, Jerold Freier, and Sandra Lang. Instead, Plaintiff alleges that Township Manager Hartnett advised her that "he promised the Council he would not increase the budget and her position of legal secretary was being eliminated as of the end of June 2005." Compl. at ¶ 42.  Plaintiff further alleges that "Mr. Hartnett's plan was to hire a 'secretary' at half of Plaintiff's salary." Id.  Thus, Plaintiff does not allege that the council members participated in a decision to terminate her employment.  Further, Plaintiff does not allege that the Township Council, acting through its members, is the only body authorized to create or eliminate positions.  Accordingly, Plaintiff's claims against the council members are dismissed.[8]  Also, to the extent that the Court should make the reasonable inference that the council members voted to authorize or approve the termination of Plaintiff's position, these individuals would be entitled to legislative immunity for their actions.  Local legislators are entitled to immunity from liability under section 1983 for their legislative activities.  See Bogan v. Scott-Harris, 523 U.S. 44, 53-55 (1998); see also In re Montgomery County, 215 F.3d 367, 376 (3d Cir. 2000) ("local legislators, like federal and state legislators, are absolutely immune

---

[8]  To the extent Plaintiff asserts valid claims against the Township council members for retaliation in terminating her position, where appropriate, these claims suffer from the same flaws identified in section III.C. involving the liability of Township Manager Hartnett.

from liability for their legislative acts"). The United States Supreme Court has emphasized that "whether an act is legislative turns on the *nature of the act*, rather than on the motive or intent of the official performing it." Bogan, 523 U.S. at 54 (emphasis added). Thus, a court considering an official's legislative immunity from suit must look to the heart of the action and strip away all considerations of intent and motive. See id.

Here, as in Bogan, should the Court infer from Plaintiff's complaint that the council members authorized or approved the termination of Plaintiff's position, this admittedly reflected a discretionary, policymaking decision implicating budgetary concerns. Plaintiff admits that the nature of the act in question was budgetary — that her position of "legal secretary" was being terminated so that the Township could hire a more traditional secretary at a much lower salary. This decision also, despite Plaintiff's belief about the motives of these defendants, involved a termination of a position as opposed to an individual and thus, had prospective implications. Plaintiff does not allege that the Council voted to eliminate *her*, as opposed to eliminating *her position* and creating a new one to save money.

Therefore, pursuant to the Supreme Court's directives in Bogan, the motives of these defendants are irrelevant to the Court's legislative immunity analysis and Plaintiff can prove no set of facts which would warrant a rejection of the council members' legislative immunity. Thus, this Court finds that the council members are entitled to immunity from suit. See Bogan, 523 U.S. at 55 (granting legislative immunity where mayor and council eliminated plaintiff's position because ordinance eliminating position implicated budgetary concerns and had prospective implications beyond the particular occupant of the office); Brown v. City of Bordentown, 791 A.2d 1007, 1010-11 (N.J. Super. Ct. App. Div. 2002) (adopting Bogan and

holding that NJLAD claims are subject to legislative immunity analysis); <u>see</u> <u>also</u> <u>McHugh v. Bd.</u> <u>of Educ. of the Milford School District</u>, 100 F. Supp. 2d 231, 238-39 (D. Del. 2000) (holding that local school board members were entitled to legislative immunity where their act of eliminating plaintiff's position was budgetary and legislative in nature); <u>Scully v. Borough of Hawthorne</u>, 58 F. Supp. 2d 435, 449-50 (D.N.J. 1999) (holding that council member was entitled to legislative immunity where council's decision to not fund plaintiff's promotion was budgetary in nature).[9]

**B.      Liability of Mayor (and former council member) Ed Remsen**

Plaintiff also fails to allege any cause of action against defendant Mayor Ed Remsen. Mayor Remsen was the Township Mayor at the time Plaintiff was terminated.  He was previously a town council member.  Although she mentions Mayor Remsen a few times in her complaint, Plaintiff fails to tie any action by Mayor Remsen to her termination.  As with the council members, Plaintiff fails to allege that Mayor Remsen had any involvement in her termination. Further, Plaintiff does not allege that Mayor Remsen directed Township Manager Hartnett to terminate Plaintiff's position or that he acquiesced in these acts.  <u>See, e.g.</u>, <u>Andrews v. City of</u> <u>Philadelphia</u>, 895 F.2d 1469, 1478 (3d Cir. 1990) (indicating that section 1983 supervisory liability may be established by showing that the supervisor directed the conduct at issue or acquiesced in the conduct with actual knowledge); <u>Dobrich v. Walls</u>, 380 F. Supp. 2d 366, 378

---

[9]  The Court notes that legislative immunity does not apply to municipal bodies such as the Township or the Township Council.  <u>See, e.g.</u>, <u>Carver v. Foerster</u>, 102 F.3d 96, 103 (3d Cir. 1996) ("Local governments, unlike individual legislators, should be held liable for the losses they cause."); <u>McHugh v. Bd. of Educ. of the Milford School District</u>, 100 F. Supp. 2d 231, 238-39 (D. Del. 2000) (stating the absolute legislative immunity applied to school board individual members but not to board itself); <u>Scully v. Borough of Hawthorne</u>, 58 F. Supp. 2d 435, 449 n.14 (D.N.J. 1999) ("The immunity from suit that attaches to local and state legislators under Section 1983 is not enjoyed by municipalities or legislative bodies." (citations omitted)).

(D. Del. 2005) (holding that plaintiff failed to state a claim for supervisory liability pursuant to section 1983 against defendant where plaintiff failed to demonstrate that defendant personally participated in, directed, or acquiesced in the allegedly wrongful conduct). Thus, for the aforementioned reasons, Plaintiff's retaliation and discrimination claims against Mayor Remsen are hereby dismissed.[10]

**C.    Liability of Township Manager Hartnett**

**1.    42 U.S.C. § 1983**

Plaintiff claims that Township Manager Hartnett violated her rights pursuant to section 1983 by terminating her employment in retaliation for both her petitions to redress her grievances and her association with the CWA union. Section 1983 states in relevant part: "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . ." 42 U.S.C. § 1983.

To establish a violation of section 1983, Plaintiff must establish (1) that she was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States; and

---

[10]   Due to the deficiencies in Plaintiff's allegations, it is impossible to determine whether Mayor Remsen, although an executive official, would be entitled to legislative immunity for his actions. See, e.g., Bogan, 523 U.S. at 55 (finding that a mayor, although an executive official, is entitled to legislative immunity if he was engaged in the performance of formally legislative tasks, such as introducing a budget and signing an ordinance into law).

(2) that the alleged deprivation was committed under color of state law.[11]  See, e.g., 42 U.S.C. § 1983; Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999); D'Aurizio v. Palisades Park, 963 F.Supp. 378, 383 (D.N.J. 1997).

Accordingly, section 1983 itself is not a source of substantive rights, but provides a vehicle for vindicating the violation of other federal rights.  See, e.g., Graham v. Connor, 490 U.S. 386, 393-94 (1989).  In this case, Plaintiff alleges that Defendants violated her First Amendment rights to petition the government for redress of grievances and to associate with the CWA union. See U.S. Const. Amend. I.  The First Amendment states, "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."  Id.

With respect to Plaintiff's underlying claims of violations of the First Amendment, the Third Circuit applies a three-part test to assess a public employee's claim of retaliation for having engaged in an activity protected by the First Amendment.  First, the plaintiff must show that she engaged in a protected activity and that the government responded with retaliation.  Second, the plaintiff must show that her protected activity was a "substantial factor in motivating" the alleged retaliation, in this case, her termination.  If the plaintiff makes these showings, a defendant may nonetheless defeat the plaintiff's claim if the defendant establishes that the same action would have taken place even in the absence of the protected conduct.  See San Filippo v. Bongiovanni,

_____

[11]  The "under color of state law" element of section 1983 is similar to the state action requirement of the Fourteenth Amendment in that it excludes merely private conduct from the parameters of section 1983.  See, e.g., Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999).  This element in not in dispute.

30 F.3d 424, 430-31 (3d Cir. 1994); see also Springer v. Henry, 435 F.3d 268, 275 (3d Cir. 2006) (applying the above test to First Amendment retaliation claims in the speech context).

The Court focuses its analysis on the first element — i.e., whether Plaintiff has alleged that she was in fact engaged in a protected activity.[12]

### a.    Petitions for Redress of Grievances

Plaintiff first claims that Defendants violated  section 1983 by retaliating against her for petitioning the Township for a redress of grievances.  The Petition Clause, inherent in the First Amendment, imposes an obligation on the government to leave a channel open for those who seek redress for perceived grievances.  See San Filippo, 30 F.3d at 442.  In particular, the Petition Clause not only protects the traditional First Amendment ideals, but also protects an individual's right of access to courts.  See Anderson v. Davila, 125 F.3d 148, 161 (3d Cir. 1997) ('The Supreme Court has consistently held that an individual's constitutional right of access to court is protected by the First Amendment's clause granting the right to petition the government for grievances.").

The Third Circuit has held that the Petition Clause protects public employees addressing matters of both public and private concern.  See San Filippo, 30 F.3d at 440-42; see also Cooper v. Cape May County Bd. of Social Services, 175 F. Supp. 2d 732, 746 (D.N.J. 2001) ("A public employee's retaliation claim under the right to petition should not be subject to a 'public

---

[12]  Despite Defendants' arguments to the contrary, Plaintiff alleges that her petitions for redress and association with the union were the motivating force behind her termination. Whether this is in fact the case is not an issue properly resolved on a motion to dismiss.

concern' requirement." (citation omitted)).[13]

Further, courts have held that the Petition Clause protects petitions which are pursued through formal mechanisms established by the government, such as lawsuits, workers compensation claims, and grievance procedures established under a collective bargaining agreement. See San Filippo, 30 F.3d at 439-40, 440 n.18, & 442-43; see also Bradshaw v. Twp. of Middletown, 296 F. Supp. 2d 526, 545-46 (D.N.J. 2003) (stating that the Petition Clause only encompasses petitions in the nature of formal grievances such as filing lawsuits and instituting union grievance procedures); Cooper, 175 F. Supp. 2d at 746 (indicating that only formal grievances implicate the Petition Clause); Lynch v. Borough of Ambler, No. Civ. A. 94-6401, 1995 WL 113290, at *3 (E.D. Pa. Mar. 15, 1995) (stating that the Petition Clause protects public employees who invoke a formal grievance mechanism, such as a workers compensation claim).

However, the Petition Clause does not protect informal grievances such as memoranda, letters, and verbal complaints. See Bradshaw, 296 F. Supp. 2d at 546 ("Informal conduct such as letters, phone calls, memoranda and meetings, however, do not fall within the Petition Clause's purview."); Cooper, 175 F. Supp. 2d at 746 (stating that plaintiff did not implicate Petition Clause where he expressed his complaints regarding his job to his employers in informal settings, such as verbally and through letters).

In this instant matter, Plaintiff claims that she was terminated because she repeatedly

---

[13] The Third Circuit is in disagreement with other circuits on this issue which have held that the Petition Clause only protects those who petition the government for redress of grievances that are of public concern. See, e.g., Kirby v. City of Elizabeth City, North Carolina, 388 F.3d 440, 448-49 (4th Cir. 2004) (holding that a public employee's petition is only constitutionally protected when such addresses a matter of public concern and collecting cases from several other circuits which support this holding).

grieved her title as legal secretary (as opposed to legal administrator) and petitioned the

Township for an increase in salary to correspond to her job duties.  These grievances consisted of

verbal complaints and internal memoranda, which are not protected by the Petition Clause.  See

Bradshaw, 296 F. Supp. 2d at 546 (holding that allegations of informal communications failed to

support a claim for violation of the Petition Clause); Cooper, 175 F. Supp. 2d at 746 (stating that

plaintiff's informal verbal complaints and letters did not implicate the Petition Clause).

Plaintiff also alleges that her attorney sent a letter on Plaintiff's behalf to the Township

council members and Township Manager Hartnett setting forth her potential claims against the

Township should she be terminated.[14]  Courts have held that the Petition Clause not only

protects the filing of lawsuits, but also encompasses a public employee's announcement of an

intention to file a lawsuit.  See Anderson, 125 F.3d at 162-63 (indicating that the Petition Clause

may protect an employee's announced intention to file a lawsuit); Bradshaw, 296 F. Supp. 2d at

546 (holding that plaintiff's allegation that he was retaliated against after informing his

supervisor that he planned to file a lawsuit stated a claim under the Petition Clause);

However, the Third Circuit made clear in San Filippo that "when one files a 'petition' one

is addressing government and asking government to fix what, allegedly, government has broken

or has failed in its duty to repair."  See San Filippo, 30 F.3d at 442; see also Anderson, 125 F.3d

at 162 (indicating that a petition asks the government to "fix a problem").  Plaintiff did not

actually voice a grievance regarding a particular governmental action which had taken place or

---

[14]  Although this particular allegation was not included in Count I of Plaintiff's complaint,
where she asserts her section 1983 claim for violation of her right to petition, Plaintiff repeats
and re-alleges each of her previous factual allegations into Count I.  Plaintiff briefly discussed
this letter in paragraph 37 of her complaint.  Thus, the Court will consider this allegation.

ask the government to fix a particular ongoing problem in the letter she sent to the council members and Township Manager Hartnett.[15]  Instead, Plaintiff states that she sent this letter to essentially warn these individuals about what her claims would be were she to be terminated in the future.  The Court finds that these circumstances do not implicate Plaintiff's right to petition.

Accordingly, Plaintiff's section 1983 claim asserting that Township Manager Hartnett violated her rights under the First Amendment's Petition Clause is dismissed.

### b.      Right of Association

Plaintiff further alleges that Township Manager Hartnett violated section 1983 by retaliating against her for exercising her First Amendment right to associate with the CWA union.  The First Amendment grants all citizens, including public employees, the right to freely associate with others without fear of government retaliation.  See, e.g., U.S. Const. Amend. I; Bradshaw, 296 F. Supp. 2d at 544 (citing Smith v. Ark. State Highway Employees, Local 1315, 441 U.S. 463, 465 (1979) (per curium) ("The public employee surely can associate . . . freely . . . and he is protected by the First Amendment from retaliation for doing so." )).

Plaintiff alleges that Township Manager Hartnett retaliated against her for her association with the CWA Union.  The Right of Association protects union-related activity.  See, e.g., Robb v. City of Philadelphia, 733 F.2d 286, 295 (3d Cir. 1984) (holding that plaintiff's allegation that

---

[15]  Thus, for example, this case is different from the situation present in Anderson v. Davila, 125 F.3d 148 (3d Cir. 1997).  In Anderson, the plaintiff filed a complaint with the Equal Employment Opportunity Commission and announced his intention to file a formal lawsuit charging his former employer, the Virgin Islands Police Department, with discriminating against him on the basis of his race.  See Anderson, 125 F.3d at 162-63.  In response, members of the police department undertook extensive surveillance of the plaintiff.  See id.  The Court stated that the plaintiff was petitioning the government to "fix a problem" of discrimination within the Virgin Islands Police Department and thus, plaintiff established that his activity was protected under the First Amendment.  See id.

defendants retaliated against him for exercising his right to associate with a union was sufficient to state a claim of a constitutional violation); Bradshaw, 296 F. Supp. 2d at 544 (holding that the right of association "extends to union-related activity").  To state a claim under section 1983 in this context, Plaintiff "must allege instances of union activity for which [she was] retaliated against by persons acting under color of state law."  Bradshaw, 296 F. Supp. 2d at 544.

In her complaint, Plaintiff states in paragraph 25 that she first began organizing with the union in the Spring of 2003, when the Township announced that the non-union management employees would not receive a raise.  Plaintiff further alleges in paragraph 27 that when the union was certified, she became a union representative.  These allegations are re-alleged in Count III, which outlines Plaintiff's cause of action for a violation of her free association rights.  Thus, the Court will consider these allegations.

There is currently a split among the circuits as to whether the "public concern" requirement is imposed on an analysis of public employee speech, and as noted above, not imposed in the context of public employee petitions for grievances, applies to public employee associational activity.  See Sanguigni v. Pittsburgh Bd. of Public Educ., 968 F.2d 393, 400 (3d Cir. 1992) (discussing circuit split); Bradshaw, 296 F. Supp. 2d at 544 n.14 (same); see also Cobb v. Pozzi, 363 F.3d 89, 102-03 (2d Cir. 2004) (pointing out circuit split as to whether the public concern requirement imposed on free speech claims applies to freedom of association claims and concluding that it does).  A public employee's speech involves a matter of public concern where it relates to a political or social matter, or other matter of concern to the community.  See, e.g., Hill v. Borough of Kutztown, 455 F.3d 225, 242 n.25 (3d Cir. 2006).

The Third Circuit has not yet decided the issue of whether the public concern requirement

applies to First Amendment association claims.  See, e.g., Sanguigni, 968 F.2d at 400 (declining

to confront the issue of whether general claims of freedom of association require a showing that

the association is a matter of public concern); see also Bradshaw, 296 F. Supp. 2d at 544 n.14

(pointing out that the Third Circuit has not yet determined whether the public concern

requirement imposed on public employee speech applies to public employee associational

activity).

      Due to the absence of any explicit directives from the Third Circuit on this issue, the

Court declines to consider whether the public concern requirement applies to public employee

associational activity.  Furthermore, even if this Court were to limit free association claims to

those involving a public concern, Plaintiff has at least alleged a public concern in this case since

an allegation has been asserted that she was involved in union organizational and representational

efforts prior to her termination and that such activities were the basis for her termination.  See

Hinshillwood v. County of Montgomery, No. 00-4283, 2002 WL 253940, at *4 (E.D. Pa. Feb.

20, 2002) ("[s]peech arising in the context of union organization efforts has long been held to be

a matter of public concern" (citation omitted)); see also Schlichter v. Limerick Twp., No. 04-

4229, 2006 WL 2381970, at *8 (E.D. Pa. Aug. 14, 2006) ("It seems . . . a public employee's

attempt to unionize would always be considered a matter of public concern and would not be

outweighed by any counterveiling government interest.").

      Therefore, the Court will allow this claim to proceed.   See Robb, 733 F.2d at 295 (stating

that plaintiff who alleged that defendants retaliated against him in violation of his right to free

association for engaging in union activities stated a "bare bones" claim for a First Amendment

violation).  In doing so, this Court is mindful that a significant amount of time passed between

17

the time Plaintiff organized with the CWA union and became a representative in the Spring of

2003, and her termination in June 2005.  This lapse of time may affect the issue of whether

Plaintiff's union activity was the cause of her termination.  This factual issue, however, is

inappropriate to adjudicate at this juncture.

        **2.**      **New Jersey Law Against Discrimination**

Plaintiff also claims that Township Manager Hartnett discriminated against her on the

basis of her gender in violation of the NJLAD.  The NJLAD makes it unlawful for an employer

to discriminate against an employee on the basis of, among other things, gender.  See N.J.S.A. §

10:5-12a.  Plaintiff has alleged, as a basis for her NJLAD discrimination claim, that she was

replaced by a male.  She claims her legal secretary position was eliminated and a new position

was created that was more akin to a traditional secretary position.  Plaintiff does not allege that

the person who assumed this new position was a male.  Plaintiff does claim, however, that when

some unspecified male's job in some other unspecified department was eliminated, the Township

created another position for him in the Department of Public Works and alleges that when her

position was terminated, she was not offered another Township position.

Gender or sex discrimination claims under the NJLAD are guided, as a starting point, by

the analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  See Arpajian

v. Property Solutions, Inc., No. 03-4666, 2005 WL 2000172, at *9 (D.N.J. Aug. 16, 2005); see

also Peper v. Princeton University Bd. of Trustees, 389 A.2d 465, 479 (N.J. 1978) (indicating

that the McDonnell Douglass burden shifting analysis applies as a starting point to gender

discrimination claims).

Under this framework, a plaintiff must set forth a prima facie case of discrimination by

generally establishing that (1) she was a member of the protected class; (2) she was qualified for the position at issue; (3) she suffered an adverse employment action; and (4) similarly situated persons outside of the protected class were treated more favorably.  See Arpajian, 2005 WL 2000172, at *9; see also Mihalek v. Eckerd Corp., No. 03-6002, 2005 WL 35918, at *4 (E.D. Pa. Jan. 7, 2005) (setting forth the above test for prima facie employment discrimination).  If the plaintiff makes this showing, the burden switches to the defendant to articulate a legitimate, non-discriminatory reason for the action.  See, e.g., Arpajian, 2005 WL 2000172, at *9.  This reason, however, may be challenged by the plaintiff as pretextual.  See, e.g., id.

Plaintiff, as a female, is clearly a member of a protected class.  She indicates that she was qualified to be a "secretary" because her duties went far beyond traditional secretarial duties. Further, she claims that she suffered an adverse employment action because she was terminated. None of the Defendants challenge these points.

However, Plaintiff has not met the fourth requirement.  She fails to allege that this unspecified male, in a different department, who was given a position with the Township after his previous position was eliminated, was in any way similarly situated to Plaintiff.  See id. at *9 (indicating that a prima facie case of gender discrimination generally requires a showing that similarly situated persons outside of the protected class received more favorable treatment); Peper, 389 A.2d at 480 (concluding that plaintiff was required to show that similarly situated males were promoted while she was not in context of gender discrimination claim).

Courts have applied the similarly situated requirement in reduction in force cases involving age discrimination.  See Monaco v. American General Assurance Co., 359 F.3d 296, 304-05 (3d Cir. 2004) (indicating that in a reduction in force employment discrimination case

under the NJLAD, the plaintiff must show that "the employer retained a sufficiently younger *similarly situated* employee" (emphasis added)); see also Larrison v. Lucent Tech. Inc., No. 02-4082, 2004 WL 3178270, at *6 (D.N.J. Aug. 20, 2004) (finding that plaintiff must show that employer replaced plaintiff with a person who was significantly younger and *similarly situated* to state age discrimination claim in reduction of force context).  The Court sees no reason why this rationale should not apply to the facts of this case, alleging gender discrimination, which is similar to a reduction in force scenario.  Plaintiff's position was terminated and she does not allege that she was replaced by a male.  Under these circumstances, Plaintiff must allege that the employee retained (i.e., the male who was allowed to maintain his employment with the Township after his original position was terminated) was similarly situated.   The imposition of a requirement that Plaintiff allege that this unspecified male was similarly situated to her is necessary to protect against frivolous gender discrimination claims.  Cf. Pepper, 389 A.2d at 478 ("the requirement that a Prima facie showing of discrimination be made cannot be so easily surmountable that any time a member of one sex in a job traditionally held by members of the opposite sex is not promoted, he or she necessarily has made out a Prima facie case of discrimination").

Plaintiff does not, even cursorily, allege this male's qualifications, his length of service, his background, the title of his previous position that was eliminated, or any circumstances surrounding this male's employment situation.  Furthermore, besides Plaintiff's fleeting reference to gender discrimination in her complaint, the complaint reflects no other mention of gender discrimination.  In fact, Plaintiff specifically alleges that at the time she was terminated, the Township hired a number of female employees, including Celia Trembulak, Bebe Landis, Katya

Wowk, and Diana Marus.  She also alleges that when Township Manager Hartnett told her that her position was being terminated, he informed her that another Township employee, Paul Ellis, was also informed that his job was being eliminated in a similar manner and that Mr. Ellis's position was being filled by Eileen Sheehan.  Conspicuously absent from Plaintiff's complaint is any allegation that this unspecified male who was offered a position after his previous position was eliminated was in any way similarly situated to Plaintiff with regard to his qualifications and the circumstances of his situation.

Therefore, this Court will not allow said claim to proceed and dismisses Plaintiff's NJLAD gender discrimination claim against Township Manager Hartnett.

### 3.      Qualified Immunity

Township Manager Hartnett argues that he is entitled to qualified immunity from Plaintiff's claims.  Qualified immunity protects public officials from lawsuits seeking damages arising out of their official actions.  See, e.g., Thomas v. Independence Twp., — F.3d —, No. 05-2275, 2006 WL 2621094, at *3 (3d Cir. Sept. 14, 2006); Bradshaw, 296 F. Supp. 2d at 549. Township Manager Hartnett will be entitled to qualified immunity on Plaintiff's claims unless his conduct in performing his discretionary duties violated a clearly established constitutional right of which a reasonable person would have known.  See, e.g., Larsen v. Senate of the Commw. of Pennsylvania, 154 F.3d 82, 86 (3d Cir. 1998); Bradshaw, 296 F. Supp. 2d at 549-50.

Based on this standard, the Court must first examine whether Plaintiff has stated a claim for a constitutional violation.  See, e.g., Larsen, 154 F.3d at 86 ("when a qualified immunity defense is raised a court first should determine whether the plaintiff has asserted a violation of a constitutional right at all").  As indicated above, Plaintiff has stated a claim against Township

Manager Hartnett under section 1983 for retaliating against her for exercising her right to associate with the CWA union.

The Court must next determine whether the constitutional right at issue is clearly established.  See, e.g., id. at 87 (indicating that if a court finds that plaintiff has asserted a violation of a constitutional right, the court must then consider whether such right was clearly established).  For a right to be clearly established for the purposes of qualified immunity, " '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.' "  See, e.g., Wilson v. Layne, 526 U.S. 603, 615 (1999) (quotations omitted); Hitchens v. County of Montgomery, No. 00-4282, 2002 WL 253939, at *8 (E.D. Pa. Feb. 20, 2002).

This right to engage in union activities, in particular, organization and representation, pursuant to the First Amendment, is clearly established.  See Bradshaw, 296 F. Supp. 2d at 550 (stating that the right to be free from retaliation for engaging in union activities is clearly established); Hitchens, 2002 WL 253939, at *8 ("The right to advocate for a labor union is clearly established by the First Amendment's guarantee of freedom of association . . . ."); see also Schlichter, 2006 WL 2381970, at *8 ("The First Amendment's rights to freedom of speech and association extend to union activities.").

However, the application of the qualified immunity defense in the special context of First Amendment retaliation claims, according to the Third Circuit, "turns on an inquiry into whether officials reasonably could believe that their motivations were proper even when their motivations were in fact retaliatory."  Larsen, 154 F.3d at 94.  Thus, although the Court is mindful that the qualified immunity doctrine should ideally be resolved as early as possible in the litigation, see,

e.g., Thomas, — F.3d —, 2006 WL 2621094, at *3, this Court finds that to allow Township

Manager Hartnett to avail himself of the qualified immunity defense at this stage of the litigation

would be premature.  See Larsen, 154 F.3d at 94 (declining to find that defendants were entitled

to qualified immunity on First Amendment retaliation claims where inquiry could not be

conducted without making "factual determinations as to the officials' subjective beliefs and

motivations" and thus, resolution on the face of the pleadings was inappropriate); Bradshaw, 296

F. Supp. 2d at 549-50 (same).

Accordingly, the Court declines to hold that Township Manager Hartnett (or for that

matter, any of the other individual defendants in this case), are entitled to qualified immunity on

Plaintiff's claims at this stage of the litigation.  The Court will await determination on this issue

until "after the plaintiff has had an opportunity to adduce evidence in support of the allegations

that the true motive for the conduct was retaliation rather than the legitimate reason proffered by

the defendants."  Larsen, 154 F.3d at 94; Bradshaw, 296 F. Supp. 2d at 550 (citing Larsen, 154

F.3d 82, 94 (3d Cir. 1998)).

**D.       Liability of the Township of Montclair**

      **1.        42 U.S.C. § 1983**

Plaintiff claims that the Township is liable under section 1983 for the constitutional

violations committed by its employees for purportedly instituting policies and customs that

caused her constitutional injuries and for failing to adequately train its employees.

Municipal bodies, such as the Township, may only be held liable under section 1983 in

limited circumstances.  The Township may not be held liable under section 1983 under a theory

of respondeat superior.  See, e.g., Monell v. Dep't of Social Services of the City of New York,

436 U.S. 658, 690-91 (1978); Brennan v. Norton, 350 F.3d 399, 427 (3d Cir. 2003).  Thus, the

Township cannot be held liable for merely employing an individual who commits a constitutional

violation.  Instead, the Township will be subject to section 1983 liability where a municipal

policy or custom caused Plaintiff's constitutional deprivations, see, e.g., Monell, 436 U.S. at 694;

Brennan, 350 F.3d at 427, or where the failure to adequately train its employees evidences a

deliberate indifference to the rights of its citizens, see, e.g., City of Canton, Ohio v. Harris, 489

U.S. 378, 387-89 (1989).  See, e.g., Reitz v. County of Bucks, 125 F.3d 139, 145 (3d Cir. 1997)

("in the absence of an unconstitutional policy, a municipality's failure to properly train its

employees and officers can create an actionable violation of a party's constitutional rights under

§ 1983").  In essence, the municipality must be the "moving force" behind the constitutional

injury to the plaintiff.  See, e.g., City of Canton, 489 U.S. at 389 (stating that municipalities can

only be held liable under section 1983 where its policies are the "moving force" behind the

constitutional violation (citations omitted)).

### a.        Policy-making Liability

In this case, Plaintiff states a claim for municipal liability against the Township based on

Township Manager Hartnett's alleged termination of Plaintiff's position in violation of her First

Amendment right of association.  Municipal liability may stem from a single act as long as the

act is performed by an individual with "final policymaking authority" for the municipal entity.

See, e.g., City of St. Louis v. Praprotnik, 485 U.S. 112, 123 (1988); see also Brennan, 350 F.3d at

427-28 (stating that a municipal entity may be liable under section 1983 for a decision by a final

policy-maker, i.e., a decision which is not subject to review); Martinez v. Scerbo, No. 06-0819,

2006 WL 2583448, at *3 (D.N.J. Sept. 7, 2006) (stating that acts of a decision-maker with final

authority to establish municipal policy may subject municipality to section 1983 liability).

Plaintiff claims that Township Manager Hartnett was a policy-maker and that he informed her

that her position was being terminated so he could hire a more traditional secretary at half of

Plaintiff's salary.  Thus, Plaintiff has alleged that the termination of her position was an act

committed by a person with policy-making authority in the Township.  Accordingly, the Court

will allow this claim to proceed at this time.  See Bradshaw, 296 F. Supp. 2d at 548-49 (holding

that plaintiff stated section 1983 claim against township where plaintiff alleged that employee

with policy-making authority retaliated against him in violation of his First Amendment rights).

### b.  Failure to Train Liability

However, even though Plaintiff has stated a claim for municipal liability under section

1983 based on alleged policy-maker Township Manager Hartnett's termination of Plaintiff's

position, Plaintiff has failed to set forth the requisite allegations to hold the Township liable

under section 1983 for failing to train its employees.  In particular, Plaintiff fails to identify any

examples of specific training that the Township failed to provide to its employees.  See Reitz,

125 F.3d at 145 (3d Cir. 1997) ("A plaintiff pressing a § 1983 claim must identify a failure to

provide specific training that has a causal nexus with their injuries and must demonstrate that the

absence of that specific training can reasonably be said to reflect a deliberate indifference to

whether the alleged constitutional deprivations occurred."); Bradshaw, 296 F. Supp. 2d at 549,

aff'd 145 Fed. Appx. 763, 768 (affirming district court's dismissal of section 1983 claim against

township for failure to train where plaintiff "failed to identify any examples of specific training

that the Township failed to provide").

Plaintiff tries to buttress her allegations by stating on page 18 of her brief in opposition to

the instant motion that the Township failed to train its employees with regard to "the treatment of employees once they have filed a petition for redress or once they have associated with the union." This allegation does not appear in the complaint and the Court will not consider it. See, e.g.,Commw. of Pa. ex. rel Zimmerman v. PepsiCo., Inc., 836 F.2d 173, 181 (3d Cir. 1988) (" 'It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.' " (quoting Car Carriers, Inc. v. Ford Motor Corp., 745 F.2d 1101, 1107 (7th Cir. 1984))); see also Marks v. Struble, 347 F. Supp. 2d 136, 148 (D.N.J. 2004) (refusing to consider plaintiff's allegations made for the first time in response to defendant's motion to dismiss).

Even if the Court were to consider this allegation, it still lacks the requisite specificity to survive the instant motion. See Bradshaw, 296 F. Supp. 2d at 549, aff'd 145 Fed. Appx. 763, 668 (affirming dismissal of failure to train claim where plaintiffs solely alleged that the township failed to train its employees to take proper action relating to officers' fear for safety in the workplace). In particular, Plaintiff fails to allege any conduct, besides Plaintiff's purported termination, that would put the Township on notice of a training deficiency. See Vasquez v. City of Jersey City, No. 03-5369, 2006 WL 1098171, at *7 (D.N.J. Mar. 31, 2006) (finding that city was not liable under section 1983 for failing to train its employees where plaintiff failed to show that city knew of purported training deficiency).

### 2. New Jersey Law Against Discrimination

For the reasons stated above with respect to Township Manager Hartnett's liability, the Court dismisses any NJLAD claim against the Township to the extent Plaintiff asserts one.

### E. Liability of the Township Council

The Township Council, as a municipal body, is also subject to section 1983 liability

based on the standards discussed with respect to the Township in section III.D.1 above.  See, e.g., Bradshaw, 296 F. Supp. 2d at 548-49 (finding that township and its police department were subject to section 1983 liability as municipal bodies for policy-makers' retaliation against plaintiff in violation of his First Amendment rights); Scully v. Borough of Hawthorne, 58 F. Supp. 2d 435, 454 n.15 (D.N.J. 1999) (indicating that borough council was subject to section 1983 municipal liability based on properly enacted piece of legislation).  Plaintiff fails to allege that a policy, custom, or piece of legislation enacted by the Township Council caused her constitutional injuries.  Plaintiff also does not allege any facts which would warrant subjecting the Township Council, as opposed to the Township itself, liable for Township Manager Hartnett's decision to terminate Plaintiff's position.  Further, Plaintiff does not allege any facts to support the Township Council's liability for gender discrimination under the NJLAD. Accordingly, the Court dismisses Plaintiff's claims against the Township Council.

## IV.  **Conclusion**

In conclusion, for the foregoing reasons, the Court grants the motion to dismiss filed by the Township Council, Mayor Remsen, and the council members and grants in part and denies in part the motion to dismiss filed by the Township and Township Manager Hartnett.  An appropriate order accompanies this opinion.

The Court allows the following claims to proceed at this time: (1) Plaintiff's claim against Township Manager Hartnett pursuant to section 1983 for retaliating against her in violation of her First Amendment right to associate with the CWA union; and (2) Plaintiff's claim against the Township for municipal liability pursuant to section 1983 based on alleged policy-maker Township Manager Hartnett's decision to terminate Plaintiff's position purportedly

in violation of Plaintiff's First Amendment right to associate with the CWA union.

The Court dismisses the following claims with prejudice: (1) all claims against the Township council members; and (2) Plaintiff's section 1983 claim against Township Manager Hartnett based on retaliation in violation of her First Amendment right to petition the government for a redress of her grievances.

The Court dismisses all other claims without prejudice.  Plaintiff has thirty (30) days from the entry of the attached order to file an amended complaint which cures the pleading deficiencies in such claims.  Plaintiff's failure to file such an amended complaint will result in the dismissal of such claims with prejudice.


Date:   September 27, 2006                                    /s/ Jose L. Linares
_____United States District Judge